*AILS vs. BOWMAN.*

APPEAL FROM THE COURT OF THE THIRD DISTRICT, THE JUDGE OF THE SECOND PRESIDING.

If A receive from B a slave at a stipulated price, to be paid for out of the proceeds of the sale of the slave of A, delivered to B at the same time, it is a contract of exchange, although the title be passed in the form of a sale.

Proof of a slave having ran away *once* does not constitute *a habit* of running away.

The plaintiff constituted one Nettles his agent, to sell or exchange a slave, who made a verbal contract with the defendant, by which the latter received the plaintiff's slave, and undertook to sell him to the best advantage. Nettles, at the same time, received from the defendant, a slave at the price of $600, which was delivered to the plaintiff, and which was to be paid for out of the proceeds of the plaintiff's slave. On the 18th of February, 1829, the defendant executed to the plaintiff a bill of sale for the slave, which was received without any objection. The plaintiff's slave was subsequently sold by the defendant for $640, twenty-five of which were paid over to the plaintiff. The slave received from the defendant, having ran away and died, this suit was brought to recover damages, which were laid at $800, the alleged value of the slave delivered to Nettles.

The points raised by the plaintiff were: 1st, that the agent exceeded his authority—he was limited to *sell* or *exchange*, and did neither: 2d, the defendant had no authority to sell the plaintiff's slave: 3d, the plaintiff is not responsible for the slave of the defendant, and the measure of damages is the value of plaintiff's slave. There was a verdict and judgment for the defendant, and the plaintiff appealed.

*Turner* and *Johnson*, for appellant.

*Andrews*, for appellee.

*Martin, J.*, delivered the opinion of the court.

The plaintiff alleges he authorized Nettles to sell or exchange a slave of his—that Nettles made a verbal contract

with the defendant, by which the latter agreed to sell the slave for the plaintiff, and account to him for the price ; and at the same time, delivered to the defendant, another slave for the price of six hundred dollars, to be paid out of the proceeds of the slave to be sold by the defendant, who did not execute any bill of sale for the slave delivered to Nettles, nor received any himself for the slave of the plaintiff.— That the defendant represented the slave, he delivered to Nettles, as a valuable one, while in fact, he was quite worthless, and given to the habit of running away.—That the plaintiff received the latter slave without any bill of sale therefore, and he soon after ran away, was frost bitten and died, although the plaintiff, after he arrested him, was at great expense to have him cured.—That the defendant had executed a bill of sale to Nettles for the slave, which the latter had no authority to receive, and which the plaintiff never accepted.—That the defendant has sold the plaintiff's slave, whereby he has been damaged, &c.

The allegations of the petition were denied, except the execution of the bill of sale by the defendant.

There was a verdict and judgment for the defendant, and the plaintiff appealed.

At the trial the defendant's counsel asked Nettles, whether he was not authorized by the plaintiff, to receive the bill of sale for the slave delivered by him to the defendant. This was objected to, as not susceptible of being legally proven by oral evidence. The objection was overruled, and the plaintiff's counsel took his bill of exceptions.

The plaintiff proved his property in the slave he had delivered to Nettles.

Nettles deposed he delivered the plaintiff's slave to the defendant, and soon after, delivered to the plaintiff the slave he had received from the defendant. He took the slave of the plaintiff, at the latter's request, to be sold or exchanged. The defendant sold him for six hundred dollars, to be paid

out of the proceeds of the sale of the plaintiff's.   The de-
fendant did so to oblige the plaintiff, who was a friend of his;
and if he had told the witness that the slave had ran away,
on his way, it would have made no difference as to the
trade.   The defendant said his slave was a fine one, and
would suit the plaintiff—but did not state his having ran-
away.   The plaintiff was at first satisfied with the slave.
The defendant paid the witness, twenty or twenty-five dol-
lars for the balance between the sale of the plaintiff's slave
and six hundred dollars.   The witness credited the plaintiff
therefore, and informed him of it in handing him the defen-
dant's bill of sale.   The plaintiff had previously requested
the witness to procure the bill of sale and receive it, with-
out making any objection, and made some observations,
which the witness does not recollect.

Another witness proved the defendant had mentioned his
slave running away near the Homochita.

Evidence of this slave's running away from the plaintiff,
of his being frost bitten, sickening, and dying, was given.

The appellant's slave sold for six hundred and forty
dollars.

The appellant's counsel has urged that Nettles exceeded
his authority, as he was directed to *sell* or *exchange* the
slave, but did neither—that the appellee had no authority to
sell that slave—that the appellant was not answerable for
the appellee's slave—the appellant was, at all events, entitled
to judgment for fifteen dollars, the difference between forty,
the excess of the price of his slave and the twenty-five dol-
lars received by Nettles.

It appears to us the jury did not err.   There is written
evidence in the plaintiff's petition, that he authorized Net-
tles to sell or exchange his slave.   The contract which the
latter made with the defendant, was one of exchange, for he
received one slave for the other.   Nettles did not engage
that his principal should actually pay any money, in any

If A receives from B, a slave at a stipulated price, to be paid for out of the proceeds of the sale of the slave of A, delivered to B at the same time, it is a contract of exchange, although the title be passed in the form of a sale.

event whatever—there was, therefore, no sale of the appellees's slave, who stipulated for no price to be paid him. For had the appellants slave been sold for less than $600, the appellee would have had no claim.

The appellee received the appellant's slave for his, and undertook, on a certain event, to pay some boot. It is true, the transaction was finally concluded in the form of a sale, by the bill of sale given by the appellant to the appellee; but this was only a mode of passing the title.

We think the jury may well have allowed fifteen dollars, retained by the appellant, for the costs of the two bills of sale.

As to the bill of exceptions. What was the answer of the witness to the question objected to, does not appear in the bill of exceptions, or in the statement of facts. We must, therefore, believe, that no testimoney was given thereon, or that it was deemed immaterial. In what way, however, the answer may have been, it does not appear that it could have had so much weight, as to justify us in remanding the case.

Proof of a slave having ran away once does not constitute a habit of running away.

There is only evidence of the slave having ran away once while in appellee's possession, and this does not constitute a habit of running away.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed with costs.